UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RORY L. MICKENS,

          Petitioner,

    v.

AL SMACK ,

          Respondent.

CASE NO. 3:20-CV-5325-RAJ-DWC

REPORT AND RECOMMENDATION

Noting Date: September 10, 2021

      The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner, proceeding *pro se* and *in forma pauperis*, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the district judge should deny the Petition for Writ of Habeas Corpus (Dkt. 8) and dismiss this case with prejudice.

BACKGROUND

      Petitioner is in custody under a state court judgment and sentence entered for his convictions for unlawful delivery of methamphetamine and two counts of unlawful possession of methamphetamine and heroin. Dkt. 23-1.

The Washington Court of Appeals summarized the facts underlying Mickens' convictions as follows:

A.C., a confidential informant, conducted controlled buys for the Cowlitz–Wahkiakum County Task Force for thirteen years in exchange for money. A.C. occasionally stayed at Mickens's house. In June 2015, while in jail, A.C. told police that he could buy drugs from Mickens.

On July 14, A.C. met with Kelso Police Officer Jeffery Brown to conduct a buy. Brown searched A.C., did not find any money or drugs, and gave him money to buy the drugs. Brown and Detective Kimberly Moore surveilled A.C. as he walked to Mickens's house, and Sergeant Kimber Yund observed A.C. enter. A.C. purchased forty dollars' worth of methamphetamine. Mickens pulled a straw with methamphetamine in it from his backpack and gave it to A.C. A.C. exited the house, met Brown, and gave him the methamphetamine. Brown searched A.C. again and did not find anything on him.

On July 21, A.C. conducted a second buy from Mickens. This buy was similar to the previous one. Mickens provided A.C. with a bag of methamphetamine that he pulled from his backpack. A.C. left the house, met Brown, and gave him the methamphetamine. Brown searched A.C. again and did not find anything on him.
After the buys, Brown obtained a search warrant for Mickens's house. While executing the search warrant, Moore observed Mickens in the hallway holding a crowbar. Moore repeatedly told Mickens to put it down. Mickens eventually complied. The officers detained Mickens. Brown searched the detached garage and a room added onto the structure. The door to the room had a glass window with the name "Rory" written on it. C Report of Proceedings (RP) at 34. Brown found a spoon with heroin, drug paraphernalia, including a scale with methamphetamine on it, and a $20 bill.

The State charged Mickens with two counts of delivering methamphetamine and two counts of possession: one for methamphetamine and one for heroin. [footnote omitted]

I. CONTINUANCE MOTION
The State moved to continue the case. [footnote omitted] The State argued good cause existed because one of the police officers involved in the case had a scheduled vacation and Mickens's counsel had another trial that day. The State also noted that the time for trial did not expire until October 12, and the court could reset the case within the time for trial. Mickens's attorney stated that "in any event, even if I weren't in trial, I would not be prepared for my client's trial next week because we haven't had adequate time to prepare after receiving the [confidential informant] packet." RP (Sept. 17, 2015) at 4.

The trial court found good cause and granted the motion because Mickens's attorney was in trial on another matter, Mickens only recently received the confidential informant packet, and the police officer was not available for the scheduled trial date. The trial court set the new trial date for November 9.

## II. APPOINTMENT OF JUDGE PRO TEMPORE

Judge James Stonier signed a written oath to serve as a judge pro tempore in Cowlitz County. The superior court entered an order approving Stonier to "sit as a Judge Pro Tem pursuant to RCW 2.28.180, in such cases as the Court may direct and the parties may approve." Clerk's Papers (CP) at 67.

Thereafter, the State and Mickens signed an agreement for Stonier to serve as judge pro tempore on the case. The lawyers for the parties and Mickens personally also agreed to the appointment.

## III. TRIAL

On the first day of trial, the State informed the trial court that it had only just located A.C. Because somebody had threatened A.C., the police moved him out of state to protect him. The State advised that Mickens could interview A.C. before trial. Mickens's attorney stated that he felt comfortable interviewing A.C. at that time or during an extended lunch break. He interviewed A.C. over the lunch break.

### A. CROWBAR EVIDENCE

In opening statements, the prosecutor stated "out of the corner of her eye [Moore] sees [Mickens] come out and he's holding a crow bar in his hand up in a—up above his head like this (Counsel demonstrates). She's ordered him to ... drop it, he's not dropping it, there's sort of a, you know, continued commands to drop the crow bar. Eventually he puts it down and he's detained." RP (Nov. 12, 2015) at 5–6. Mickens did not object.

To avoid recalling Brown in his case, Mickens called Brown out of order, before the State rested. Although the State had elicited no testimony about the crowbar incident, Mickens asked Brown whether he knew that Moore came into contact with a person with a crowbar. Brown confirmed that in his report he listed Jesse Wilson as the person holding the crow bar. On cross-examination, Brown admitted that he made a mistake and typed the wrong name into his report. He said that Moore had told him Mickens possessed the crowbar.

The State resumed its case by calling Moore, and Mickens moved to exclude evidence of the crowbar. Outside the presence of the jury, the trial court stated, "if it had been raised before ... the jury now has it in front of them, who had the crow bar. I understand why you did that ... but it's now in front of them. I would probably have excluded it entirely under [ER] 403 because it is highly prejudicial." C RP at 138. The trial court did allow the State to ask Moore who held the crowbar, but not whether it was held in a threatening manner.

### B. OTHER EVIDENCE

The parties stipulated that the plastic straw and the plastic bag contained methamphetamine.

Dustin Bailey testified that while in jail, A.C. told him that he could get out of jail if he worked with a police task force. Bailey testified that A.C. told him that he set up Mickens. A.C. denied telling Bailey that he set up Mickens.

C. JURY INSTRUCTIONS

The trial court instructed the jury on reasonable doubt using the WPIC 4.01 [footnote omitted] instruction. Neither party excepted to this instruction.

D. CLOSING ARGUMENT

In closing argument, Mickens challenged A.C.'s credibility and argued that nothing corroborated A.C.'s testimony. In rebuttal closing argument, the prosecutor stated, Now, [Mickens] argues the police didn't trust [A.C]. They never testified they didn't trust [A.C]. And to the contrary, if he worked as a confidential informant for the police for thirteen years, he must've been pretty reliable. But they go through their processes to try to make sure they can present the evidence in case, but they can't do things that put people in danger, and it would've been dangerous to put a wire on [A.C.] in this situation and that's why [Brown] didn't do it. Because someone finds out about the wire, and he testified to it, there's going to be problems for that person, which helps you out in understanding why there's just simply no way that this is what—that—that [A.C.] was telling [Bailey] in the jail that he was working for Task Force and he should, too. No way. Not in the jail, not in that environment. Just like you wouldn't want to be found out in the house.

D RP at 216-17. Mickens did not object.

Dkt. 23-1 at 16-20.

Respondent does not contest whether Petitioner properly exhausted his available state court remedies by fairly presenting his claims to the Washington courts, and concedes that his federal petition is timely. Therefore, in the interest of efficiency the Court incorporates by reference the state court procedural history contained in its Response. *See* Dkt. 22 at 4-6.

In his habeas corpus petition to this Court Petitioner alleges four grounds for relief:

   I.    Abuse of Discretion

   II.    Ineffective Assistance of Counsel

   III.    Prosecutorial Misconduct

   IV.    Ineffective Assistance of Appellate Counsel

Dkt. 8 at 5-10.

1              STANDARD OF REVIEW

2          Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis

3    of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision

4    that was contrary to, or involved an unreasonable application of, clearly established federal law, as

5    determined by the Supreme Court of the United States." In interpreting this portion of the federal

6    habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established

7    Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that

8    reached by the Supreme Court on a question of law, or (2) confronts facts "materially

9    indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result.

10   *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

11         Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because

12   that court concludes in its independent judgment that the relevant state-court decision applied

13   clearly established federal law erroneously or incorrectly. Rather, that application must also be

14   unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable

15   application of Supreme Court precedent occurs "if the state court identifies the correct governing

16   legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state

17   prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an

18   unreasonable application of Supreme Court precedent "'if the state court either unreasonably

19   extends a legal principle from [Supreme Court] precedent to a new context where it should not

20   apply or unreasonably refuses to extend that principle to a new context where it should apply.'"

21   *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (*quoting Williams*, 529 U.S. at 407).

22         The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts

23   to presume the correctness of state courts' factual findings unless applicants rebut this presumption

24

1   with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court

2   decisions under §2254(d)(1) is "limited to the record that was before the state court that

3   adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

4 EVIDENTIARY HEARING

5        The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro*

6   *v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing

7   could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

8   the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under

9   28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*,

10   563 U.S. at 180. A hearing is not required if the allegations would not entitle Petitioner to relief

11   under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's

12   factual allegations or otherwise precludes habeas relief, a district court is not required to hold an

13   evidentiary hearing." *Id.*; *see Cullen*, 563 U.S. at 186.

14        The Court finds it is not necessary to hold an evidentiary hearing in this case because

15   Petitioner's claims may be resolved on the existing state court record.

16 DISCUSSION

17   **I.**    **Abuse of Discretion (Ground One)**

18        In Petitioner's first claim for relief he appears to allege that the trial court abused its

19   discretion by granting a continuance. Dkt. 8 at 5.

20        If Petitioner's claim is that the trial judge failed to comply with state court rules,

21   according to Respondent the claim fails because habeas relief is not available for errors of state

22   law. Dkt. 22 at 12 (citing *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) and *Lincoln v. Sunn*, 807

23   F.2d 805, 816 (9th Cir. 1987)). If Petitioner's claim is that the trial judge violated federal law,

24

1  Respondent contends that Petitioner cannot obtain relief under 28 U.S.C. § 2254(d) because he

2  does not show the state court adjudication of the claim was contrary to, or an unreasonable

3  application of, clearly established federal law.

4          The Washington Court of Appeals determined that the trial court did not err by granting a

5  continuance. It reasoned:

6          The State moved to continue the case. The State argued good cause existed because
           one of the police officers involved in the case had a scheduled vacation and
7          Mickens's counsel had another trial that day. The State also noted that the time for
           trial did not expire until October 12, and the court could reset the case within the
8          time for trial. Mickens's attorney stated that "in any event, even if I weren't in trial,
           I would not be prepared for my client's trial next week because we haven't had
9          adequate time to prepare after receiving the [confidential informant] packet."

10         The trial court found good cause and granted the motion because Mickens's attorney
           was in trial on another matter, Mickens only recently received the confidential
11         informant packet, and the police officer was not available for the scheduled trial
           date. The trial court set the new trial date for November 9.

12  Dkt. 23-1 at 18; *see also* Dkt. 23-1 at 32-33.

13
14         This Court concurs with Respondent that "'federal habeas corpus relief does not lie for

15  errors of state law.'" *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011) (quoting *Estelle v. McGuire*,

16  502 U.S. 62, 67 (1991)("In conducting habeas review, a federal court is limited to deciding

17  whether a conviction violated the Constitution, laws, or treaties of the United States."). Federal

18  law dictates that the decision to grant or deny a request for a continuance falls squarely within a

19  judge's discretion. *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)("Trial judges necessarily require a

20  great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the

21  witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels

22  against continuances except for compelling reasons."). An abuse of discretion will be found only

23
24

1  if "after carefully evaluating all relevant factors, we conclude that the denial was arbitrary or

2  unreasonable." *United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir.1985).

3      As the state court found, the trial judge had good cause to grant a continuance because

4  Petitioner's attorney was "going to be in trial on another matter," the "confidential informant

5  packet" had just been disclosed to the defense, who therefore needed time to review it, and the

6  police officer scheduled to testify was not available on the original trial date. Dkt. 23-1 at 32-33.

7  This Court concurs with the state court that the trial court did not abuse its discretion, and

8  therefore Petitioner has not shown the state court decision was contrary to, or an unreasonable

9  application of clearly established federal law.

10     Moreover, Petitioner has not presented any argument to support a finding that the trial

11 judge's decision to grant a continuance "worked to his actual and substantial disadvantage,

12 infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456

13 U.S. 152, 170 (1982); *see generally* Dkt. 8.

14     Because Plaintiff's argument under ground one is unclear, Respondent also argues that

15 "To the extent [Petitioner] alleges that the judge also erred by denying a subsequent request for a

16 continuance, the claim fails because he again does not show an abuse of discretion or

17 prejudice…[and] to the extent [Petitioner] complains that the judge erred in not continuing the

18 trial because defense had not yet interviewed the confidential informant witness, the record

19 shows counsel was able to interview the witness that day." Dkt. 22 at 14. However, this Court's

20 review of the record indicates Plaintiff never made a request for a continuance, even to interview

21 the confidential informant (which defense counsel did during an extended lunch hour).

22 Therefore, to the extent Respondent is correct that Plaintiff seeks relief from rulings that were

23 never made, this contention does not merit discussion.

24

1    In sum, the Court recommends the Petition be denied as to Ground One.

2

3    **II.    Ineffective Assistance of Counsel (Ground Two)**

4    Petitioner argues he received ineffective assistance of counsel because defense counsel did

5    not interview the confidential informant who testified against him until the day of trial, and

6    because defense counsel had a conflict of interest caused by having once represented the

7    confidential informant in another case. Dkt. 8 at 7, 53.

8    Respondent maintains that the state court properly found these claims to be meritless

9    because defense counsel was able to interview the confidential informant during an extended lunch

10   hour the first day of trial, and no clearly established federal law supports the conflict of interest

11   claim. Dkt. 22 at 17-19.

12   On direct appeal, the state court rejected Petitioner's claim that the timing of counsel's

13   interview of the confidential informant resulted in ineffective assistance because Petitioner did not

14   identify how it prejudiced him. Dkt. 23-1 at 29. The state court also rejected the claim that defense

15   counsel should have moved to exclude the confidential informant's testimony due to the

16   prosecution's delay in making the witness available for an interview:

17   To prevail on a claim that counsel's performance was deficient by failing to file a
     motion, a party must show that the trial court would have granted the motion. *Brown*,
18   159 Wn. App. at 371. Yet, "[w]hen counsel's conduct can be characterized as
     legitimate trial strategy or tactics, performance is not deficient." *Caldellis*, 187 Wn.2d
19   at 141 (internal quotation omitted).

20   CrR 4.7(a) governs the prosecutor's obligations during discovery. Under that rule,
     "[t]he prosecuting attorney shall disclose to the defendant any expert witnesses whom
21   the prosecuting attorney will call at the hearing or trial, the subject of their testimony,
     and any reports they have submitted to the prosecuting attorney." CrR 4.7(a)(2)(ii).
22   The prosecutor's duty to disclose is a continuing one, but "limited to material and
     information within the knowledge, possession or control of members of the
23   prosecuting attorney's staff." CrR 4.7(4).

24

Here, the State made efforts to find the informant, A.C., who had been disclosed, but was unable to find him. A.C. had been threatened and the police moved him out of the state. The judge gave a deadline for interviews with A.C. for November 9. On the morning of trial, the State informed Mickens's attorney that it had access to the informant.

Because the State did not have A.C. under its control, and did not know his location, and it had disclosed A.C.'s identity to Mickens's attorney, the State did not violate CrR 4.7. Accordingly, the trial court would have denied any motion made by Mickens's attorney, and Mickens's claim fails.

Dkt. 23-1 at 39-40. Finally, the state court found Petitioner's conflict of interest claim to be frivolous. *Id.* at 475.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate his attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

The reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted). Further, a petitioner must establish there is a reasonable probability the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

First, this Court concurs with Respondent that the state court adjudication of Plaintiff's claim was not contrary to, or an unreasonable application of *Strickland*. Defense counsel did not err by interviewing the confidential informant at the first opportunity afforded to him, or by opting not to make an objection to the confidential informant's testimony where it likely would have been denied. Moreover, Petitioner has not shown he suffered actual prejudice from the timing of defense counsel's interview.

Second, Plaintiff has not pointed to any law, much less clearly established federal law, that the state court unreasonably applied regarding the alleged conflict of interest between defense counsel and the confidential informant. The Federal Rules of Criminal Procedure treat concurrent representation and prior representation differently, requiring a trial court to inquire into the likelihood of conflict only when concurrently charged defendants are represented by a single attorney. Federal Rule of Criminal Procedure 44(c) requires the trial court to perform the following inquiry:

> Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Petitioner's case did not require a Federal Rule of Criminal Procedure 44 (c) inquiry because Petitioner and the confidential informant were not co-defendants, and defense counsel's representation of the confidential informant had ended years prior.

Moreover, Petitioner has not made any showing that he suffered actual prejudice from the alleged conflict of interest, or that he qualifies for the "Sullivan exception" to this inquiry. *See Cuyler v. Sullivan*, 446 U.S. 335, 348, 350 (1980) (establishing that under the Sixth Amendment

we will "forgo individual inquiry into whether counsel's inadequate performance undermined the

reliability of the verdict in instances where assistance of counsel has been denied entirely or during

a critical stage of the proceeding."). The Sullivan exception applies where the petitioner shows: (1)

that his counsel actively represented conflicting interests; and (2) that this adversely affected his

counsel's performance. *Earp v. Ornoski*, 431 F.3d 1158, 1182 (9th Cir. 2005). "To show an actual

conflict resulting in an adverse effect, [the petitioner] must demonstrate that some plausible

alternative defense strategy or tactic might have been pursued but was not and that the alternative

defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or

interests." *Hovey v. Ayers*, 458 F.3d 892, 908 (9th Cir. 2006) (quotations omitted). Therefore,

Petitioner has not shown the state court decision finding his counsel was not ineffective was

contrary to, or an unreasonable, application of clearly established federal law, or that it was

based on an unreasonable determination of the facts.

Accordingly, the Court recommends the Petition be denied as to ground two.


**III.    Prosecutorial Misconduct (Ground Three)**

Petitioner next argues the prosecutor committed misconduct by presenting evidence that

Petitioner was holding a crow bar when officers entered his house to arrest him. Dkt. 8 at 8.

Petitioner made a number of related claims to the state court, all of which Respondent argues the

state court adjudicated correctly. Dkt. 22 at 21-26.

The state court made numerous findings on the issue of prosecutorial misconduct, which

this Court will review in the order the issues arose at trial.

First, in a section called "meritless claims" the state court wrote:

Further, Mickens seems to assert that the State committed a *Brady* violation because
the State was unable to find A.C. until trial began. Mickens also asserts that the

> prosecutor made a statement in closing argument requiring personal experience or expert knowledge by discussing A.C.'s prior convictions. Mickens asserts that the prosecutor made "false or misleading testimony" in closing argument by stating A.C. did not live in the house. This assertion is without merit because A.C. testified he did not live there. Mickens also asserts some statements by the prosecutor were improper, including a statement about the crowbar, but because these statements were objected to and sustained by the trial court, these assertions do not have merit.

Dkt. 23-1 at 31 (internal citations omitted).

Next, in a section called "vague claims" the state court summarized a number of assertions of error relating to the prosecutor:

> Mickens claims that the prosecutor used "staged" testimony to introduce inadmissible evidence through Brown. He asserts that the prosecutor also misstated the promise of testimony that was not delivered, but it is unclear to what he refers. Mickens asserts that the prosecutor expressed a personal opinion about his guilt or credibility, but does not identify a statement, and the prosecutor made credibility statements about defense witnesses. He asserts that the prosecutor stated facts not in evidence, but provides no explanation. Finally, he quotes a number of sections of the prosecutor's closing argument, but why he claims the statements are improper is unclear. Mickens also asserts that the prosecutor asked for sympathy for Brown in closing argument.
>
> Mickens asserts that dismissal was warranted because of arbitrary action or governmental misconduct, without identifying any issue. He asserts that the prosecutor did not disclose a report of a law enforcement agency that contradicted the government's key witness, but did not provide any details. Mickens quotes portions of the record without an identification of error. He included a photocopy of GR 33 without any explanation. He wrote about what constitutes ER 404B evidence and the policy behind the rule.

Dkt. 23-1 at 28-29 (internal citations omitted). The state court concluded these claims were "too vague to allow us to identify the issues and we do not reach them because Mickens fails to cite to the record or authority." *Id*. at 29.

Regarding Petitioner's claims of prosecutorial misconduct during opening and closing argument, the state court stated:

> Mickens asserts that the prosecutor's opening statement was improper because it contained remarks unsupported by the evidence. He seems to point to the prosecutor's statement referring to him holding a crowbar when the police officers

executed the search warrant.

In his opening statement, the prosecutor stated that after Moore entered the house, she saw Mickens "come out and he's holding a crow bar in his hand up in a—up above his head like this (Counsel demonstrates). She's ordered him to put the— drop it, he's not dropping it, there's sort of a, you know, continued commands to drop the crow bar. Eventually he puts it down."

"During an opening statement, a prosecutor may state what the State's evidence is expected to show." *State v. Magers*, 164 Wn. 2d 174, 191, 189 P.3d 126 (2008). "In context, this statement concerns a witness's expected testimony, a permissible subject for opening statements."

The prosecutor's statement was not improper because the trial court did not limit what evidence about the crowbar could come in. Later, the trial court limited the inquiry on the crowbar, but it was before Moore testified. Regardless, witnesses testified that Mickens held a crowbar when the officered entered the house. Accordingly, this statement was supported by evidence, and we conclude that the statement was not improper and Mickens' clam fails.

***

As stated above, "Improper vouching occurs when the prosecutor expresses a personal belief in the veracity of a witness or indicates that evidence not presented at trial supports the testimony of a witness." *Thorgerson*, 172 Wn.2d at 443. "Whether a witness testifies truthfully is an issue entirely within the province of the trier of fact." *Thorgerson*, 172 Wn.2d at 443. However, "a prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and may freely comment on witness credibility based on the evidence." *Lewis*, 156 Wn. App. At 240. "This is especially so where…the prosecutor is rebutting an issue the defendant raised in his closing argument." *Lewis*, 156 Wn. App. At 240.

First, Mickens seems to assert that the prosecutor expressed his opinion on the credibility of a defense witness in closing argument. The prosecutor stated:

> On the other hand, we heard from [Bailey] here just a few minutes ago, and he says [A.C.] said I the jail, to him, that he should go work for the Task Force like he does and, you know, he made this who thing up on [Mickens]. There's reasons to be skeptical of that, primarily the fact that he's been a confidential informant for thirteen years, and people in jail don't want you to be a snitch. That's not gonna be a good thing to be in that world, and there's no way he's gonna want everyone in the jail to be hearing that he's working for the Task Force. And he—he was even asked about that while he was on the stand. No way.

We conclude that this statement does not constitute an opinion on Bailey's credibility. We look at the entire argument instead of viewing the highlighted snippets of argument out of context. *State v. Jackson*, 150 Wn. App. 877, 884, 209 P. 3d 553 (2009). In context, after this statement, the prosecutor reminded the jury that it must examine the evidence and it will determine which version of events it believed occurred. He then outlines which evidence, including reasonable inferences from the evidence, could support the jury's conclusion that A.C. was credible and Bailey was not. This is not vouching. *Jackson*, 150 Wn. App. at 885. Moreover, Mickens did not object to the argument, and the comments do not rise to the level of flagrant and ill-intentioned misconduct. *Jackson*, 150 Wn. App. at 885.

Next, Mickens seems to assert that the prosecutor vouched for A.C. on a few occasions in closing argument. He challenges when the prosecutor stated:

> He was obviously doing his best to remember an event from a while back, but it—no big conversation, and that makes sense, because if a person is gonna go do something like this that's dangerous and doesn't want to be found out, the person in the middle of that is probably not interested in making a lot of other conversations and getting distracted on the way to taking care of business. He's only in the house for twenty to thirty minutes on both buys.

We again conclude that the prosecutor did not vouch for A.C. Mickens did not object to this statement. This statement constituted a reasonable inference from the evidence, and did not rise to the level of flagrant and ill-intentioned misconduct. *Jackson*, 150 Wn. App. at 885.

Mickens also challenges the prosecutor's statement that after A.C. received methamphetamine from Mickens, he "talks a little while more. He doesn't want to look like he's up to something." Mickens did not object to this statement. This statement constituted a reasonable inference from the evidence and A.C.'s testimony. *Jackson*, 150 Wn. App. at 885. We conclude that this statement was not improper.

Mickens also asserts that the prosecutor stated his personal opinion when he stated, "if that didn't happen at all ou don't even waste a lot of time talking whether he knew it or not." However, in context, when discussing the elements of the crime of delivery of a controlled substance, the prosecutor stated, "If [A.C.] gives [Mickens] the money and he gave him the methamphetamine, clearly [Mickens] knew. If that didn't happen at all, you don't even waste a lot of time talking whether he knew it or not if it didn't happen at all." Mickens did not object to the statement. Clearly, in context, the prosecutor discussed the elements of the crime: that if the jury did not find one element, it need not spend time on the others. This statement did not constitute a personal opinion by the prosecutor.

Mickens asserts that the prosecutor vouched for A.C. when the prosecutor stated:

> There's some degree of inconsistency with the first buy…But people don't always remember everything perfectly, and in a situation like that he's going—he's making the buy and the evidence he comes out with is that he succeeded in that.
>
> What we have the—well, the amount of time he was in there on the buys is not exceptionally long, and the Detective never said, oh, he was in there for a much longer time than normal. This—keep in mind he's been doin it for thirteen years, he knows what he's doing at this point and he's being careful. He not just gonna run in there and do something to make it obvious that he's working for Task Force. He's gonna take it easy, go in there, talk to people, get to what he needs to do, get the item, and come out. And to spend twenty to thirty minutes doing that is not unrealistic.

Again, we conclude that these statements did not constitute vouching for A.C. Mickens did not object to this statement. The prosecutor stated reasonable inferences from the testimony at trial to explain weaknesses in A.C.'s testimony. *Jackson*, 150 Wn. App. at 885. In addition, the statements did not rise to the level of flagrant and ill-intentioned misconduct. *Jackson*, 150 Wn. App. at 885.

Next, Mickens asserts that the prosecutor vouched for A.C. when he stated:

> You know, this thing about him telling [Bailey] in the jail, that's just really, really difficult to believe because he doesn't—it's not like [Bailey] is some close friend to him. He hasn't given any indication of that in how he testified. And then this guy who has been undercover—or confidential informant for thirteen years is just gonna go blabbin' about it to this guy in the jail, who he sort of met in the jail when he could be assaulted or whatever else by the people in the jail once they find out? No way he's gonna do that.
>
> But Defense argument that: Well, how do we know he didn't just blab it to everybody? Well, he wouldn't have done that. Sure, you could do something, but would have don't that? Thirteen years doing this, it's both dangerous and a way he makes money and he can't do it if people know. And not he's out.

Again, we conclude that these statements did not constitute vouching for A.C. Mickens did not object to this statement. The prosecutor stated reasonable inferences from the testimony at trial to explain weaknesses in A.C.'s testimony. *Jackson*, 150 Wn. App. at 885. The jury could reasonably infer that A.C. would not have told others about his work as an informant because it would put himself at risk. In addition, the statements did not rise to the level of flagrant and ill-

1     intentioned conduct. *Jackson*, 150 Wn. App. at 885.

2     Furthermore, Mickens asserts that the prosecutor stated his personal opinion when he countered Micken's attorney's argument on how much the drugs cost when

3     purchased by A.C. The prosecutor stated:

4         Now, [Mickens] does this analysis based on the fact that at times, apparently, some amounts of drugs have been sold on this ten dollars

5         for the rough amount that ended up being weighed. A couple things about that. Number one, [Brown] didn't say that that was an absolute

6         rule, that's always the purchase price; number two, and you can all consider your recollection of it, but on the second buy it was forty

7         dollars, on the first, I'm not sure that's what was testified to, so you'll have to remember what you heard in court.

8

9     Mickens did not object to this statement. This is not a personal opinion; it was a statement based on the evidence. In addition, the prosecutor highlighted inferences from the testimony on the cost of the drugs in question. Finally, the statements did

10     not rise to the level of flagrant and ill-intentioned misconduct. *Jackson*, 150 Wn. App. at 885.

11

12     Therefore, we conclude that the prosecutor did not commit misconduct in opening statements or closing arguments.

13 Dkt. 23-1 at 24-38 (internal citations omitted).

14     Finally, the state court found the prosecutor did not commit misconduct in rebuttal

15 closing argument, writing:

16     In closing argument, Mickens challenged A.C.'s credibility and argued that none of A.C.'s testimony was corroborated by evidence. The prosecutor then made the

17     following rebuttal argument which Mickens now challenges: "[Mickens] argues the police didn't trust [A.C.]. They never testified they didn't trust [A.C.]. And to the

18     contrary, if he worked as a confidential informant for the police for thirteen years, he must've been pretty reliable.

19

20     Nothing in this statement personally endorsed A.C. as a witness. The prosecutor rebutted Mickens's challenge to A.C.'s credibility. The prosecutor argued a

21     reasonable inference from the evidence that if A.C. was not reliable, the task force would not have continued to work with him. The prosecutor simply argued

22     inferences from the evidence at trial and did not commit misconduct. Therefore, we conclude that the prosecutor did not vouch for A.C., and Mickens's argument to the contrary fails.

23

24 Dkt. 23-1 at 25 (internal citations omitted).

When analyzing prosecutorial misconduct, the relevant inquiry is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). A trial error is presumed to be harmless unless the error had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). It is the petitioner's burden to state facts that point to a real possibility of constitutional error in this regard. *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).

Improprieties or breaches of courtroom decorum are not enough. *Darden*, 477 U.S. at 181. The question is not whether the prosecutor acted improperly, but whether she acted so improperly that, through the narrow lens of due process, the petitioner was denied a fair trial. *Id*. Further, a prosecutor's conduct must be viewed in context to determine its probable effect on the jury's ability to fairly decide the case. *United States v. Young*, 470 U.S. 1, 11-12 (1985). Closing arguments are not evidence, and ordinarily carry less weight with the jury than the court's instructions. *Boyde v. California*, 494 U.S. 370, 384 (1990); *Houston v. Roe*, 177 F.3d 901, 909 (9th Cir. 1999). Prosecutorial argument should not result in reversal where the trial court instructed the jury that its decision is to be based solely upon the evidence, where the defense did not object, where the comments were an "invited response," or where there is overwhelming evidence of guilt. *Darden*, 477 U.S. at 182; *Donnelly*, 416 U.S. at 640-45; *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993); *Hall v. Whitley*, 935 F.2d 164, 165-66 (9th Cir. 1991).

In context with the trial as a whole—especially in light of the evidence presented to the jury of Petitioner's guilt—Petitioner has not shown the prosecutor's comments created a "substantial and injurious effect" on the jury's verdict in his case. *Brecht*, 507 U.S. at 637; *see*

1    Dkt. 23-1 at 898-1098.

2        Moreover, the prosecutor's comments in closing argument should not result in reversal of

3    Petitioner's conviction since the jury was properly instructed to utilize the evidence at trial,

4    rather than  counsels' comments, in its deliberations. *Darden*, 477 U.S. at 182; Dkt. 21-1 at

5    1101-1114. Finally, the state court instructed the jury that Petitioner was presumed innocent, and

6    could only be convicted if evidence beyond a reasonable doubt rebutted that presumption. Dkt.

7    21-1 at 1106.

8        In sum, Petitioner has not demonstrated the state court's conclusion that prosecutorial

9    misconduct was not committed was contrary to, or an unreasonable application of, clearly

10   established federal law, or an unreasonable determination of the facts in light of the evidence

11   presented at trial. Accordingly, the Court recommends the Petition be denied as to ground three.

12

13   **IV.    Ineffective Assistance of Appellate Counsel (Ground Four)**

14       In his fourth and final claim for relief Petitioner asserts that his appellate counsel was

15   ineffective for failing to make certain arguments, including "jury misconduct" related to "The

16   Journeal (sic) Page being removed." Dkt. 8 at 10. Respondent maintains the state court properly

17   found appellate counsel was not ineffective. Dkt. 22 at 26.

18       The state court rejected Petitioner's claim of  "jury misconduct" related to "The Journeal

19   (sic) Page being removed," because "the statement redacted from the journal was inculpatory,

20   not exculpatory, so Mickens shows no prejudice from the redaction." Dkt. 23-1 at 475. As for

21   Petitioner's general claim of ineffective assistance of appellate counsel, the state court

22   determined that Petitioner could not show deficient performance or resulting prejudice. *Id*.; *see*

23   *also* Dkt. 23-1 at 528-29.

24

1    Claims of ineffective assistance of counsel on appeal are reviewed under a deferential

2  standard similar to that established for trial counsel ineffectiveness in *Strickland. Smith v.*

3  *Robbins*, 528 U.S. 259, 285 (2000). Under this standard, a petitioner challenging his appellate

4  counsel's performance must demonstrate (1) counsel's performance was unreasonable, which in

5  the appellate context requires a showing counsel acted unreasonably in failing to discover and

6  brief a meritorious issue, and (2) there is a reasonable probability, but for counsel's failure to

7  raise the issue, the petitioner would have prevailed on his appeal. *Robbins*, 528 U.S. at 285–86;

8  *see also Wildman v. Johnson*, 261 F.3d 832, 841–42 (9th Cir. 2001); *Morrison v. Estelle*, 981

9  F.2d 425, 427 (9th Cir. 1992), *cert. denied*, 508 U.S. 920 (1993); *Miller v. Keeney*, 882 F.2d

10  1428, 1433–34 (9th Cir. 1989).

11    The presumption of reasonableness is even stronger for appellate counsel because

12  appellate counsel has wider discretion than trial counsel in weeding out weaker issues; doing so

13  is widely recognized as one of the hallmarks of effective appellate assistance. *Miller,* 882 F.2d

14  1434. The exercise of professional judgment in framing appellate issues makes it difficult to

15  demonstrate counsel's omission of a particular argument was deficient performance. *Robbins*,

16  528 U.S. at 288. Habeas relief is unavailable on a claim of appellate-counsel ineffectiveness

17  unless the state court's denial of the claim "was so lacking in justification that there was an error

18  well understood and comprehended in existing law beyond any possibility for fair[-]minded

19  disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

20    Here, Petitioner has not made any showing that the state courts' findings were contrary to

21  or an unreasonable application of *Smith v. Robbins*, 528 U.S. 259, 285 (2000). First, Petitioner

22  has not shown appellate counsel acted unreasonably in failing to discover and brief a meritorious

23  issue. Second, Petitioner has not identified any reasonable possibility Petitioner would have

24

1  prevailed on appeal had counsel raised additional claims. Accordingly, the Court recommends

2  the Petition be denied as to ground four.

3  <u>CERTIFICATE OF APPEALABILITY</u>

4       A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

5  court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

6  (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability

7  may issue . . . only if the [petitioner] has made a substantial showing of the denial of a

8  constitutional right." 28 U.S.C. § 2253(c)(2).

9       Petitioner does not satisfy this standard "by demonstrating that jurists of reason could

10  disagree with the district court's resolution of his constitutional claims or that jurists could

11  conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-*

12  *El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

13  No jurist of reason could disagree with this Court's evaluation of Petitioner's claims, or conclude

14  the issues presented in the Petition should proceed further.

15       Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with

16  respect to this Petition.

17  <u>CONCLUSION</u>

18       The Petition for Writ of Habeas Corpus (Dkt. 8) should be denied.

19       Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

20  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

21  6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

22  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

23

24

1   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

2   September 10, 2021, as noted in the caption.

3         Dated this 23rd  day of August, 2021.

4

5

                        David W. Christel

6                         United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24